Duncan, J.
On application of the receiver herein for an order authoriz7 ing him to sell certain property of the Columbus Packing Company, defendant herein, now in storage with defendant the Fairmont Creamery Company, which property is now in the hands of the receiver.
In granting the restraining order herein and appointing á receiver, the court has already stated that by the defendant packing company permitting many thousands of pounds of pork to remain in storage for such a period of time that said pork can not now be offered for sale by said packing company without the violation of Section 1155-13 of the so-called “cold storage” act, as alleged in the petition, acts have been done which can tend to but one end, the restrain of trade with respect to this commodity and the maintaining of the high price of pork in this community by the voluntary withdrawal from the market of said large amount of pork, which acts, in the opinion of the court, constitute a violation of both the letter and the spirit of the Valentine anti-trust law.
The court thereupon granted the restraining order prayed for, and appointed a receiver, that the property in question might be protected from destruction and ultimate loss, the de *110 fendant, the Columbus Packing Company, having voluntarily rendered said property unsalable in its hands.
Upon the application of counsel for the receiver for an order authorizing the receiver to sell said property now in his hands, the defendant packing company has appeared in court by representative and by counsel, and has objected to the order issuing and affidavits have been filed in opposition thereto.
Several grounds of objection have been advanced and presented in argument, chief among which are the following:
First, that the court has no authority to order the sale of the property in question by reason of the provisions of Section 1155-13 General Code, in that said section inhibits the sale of said property by any person.
Second, that not all of the property in question has remained in storage in excess of the statutory period of six months.
Third, that some of the property in question had been negotiated before the expiration of the six months period, either by being actually sold or made the subject of a contract of sale.
Fourth, that there is no present necessity for the sale of said property to prevent its loss or destruction, and that if taken out of storage by the receiver and offered for sale, there will be danger of its decay and destruction.
The court will discuss these objections in the order enumerated.
First. The court is of the opinion that Section 1155-13 General Code, does not inhibit or prevent the court from ordering the sale of the property in question by a receiver. Said section is not a health measure or a statute enacted to prevent the sale of decayed or tainted meat or foodstuffs, but is a statute enacted to prevent the hoarding of foodstuffs and the consequent restraint of trade of such commodities. The history of the act, which the court has carefully investigated, and the logic of the matter convince one beyond any doubt that this is the true purpose of the act. It would be ridiculous to presume that it was the intention of the Legislature in enacting this section to render unsalable in the hands of the court foodstuffs left in storage beyond the statutory limitations, and thereby cause its destruction and loss. Such a construction would manifestly defeat the *111 very purpose of the act. Had the Legislature intended the destruction of such property, it would have provided means for its confiscation and disposition. It would be absurd to presume that the Legislature intended to fix arbitrary periods of time, at the expiration of which foodstuffs automatically passed from a condition of wholesomeness to a condition of unwholesomenesss. The condition of foodstuffs is determined by inspection and not by any such arbitrary rules. The seizing of this property by the court is not a confiscation, but is the taking over of the control of foodstuffs which the owner thereof can no longer offer for sale, and is an act for the public welfare, and incidentally is an act for the benefit of the owner himself.
Second. 'Since the date of the placing in storage is marked upon each piece of the property in question, and since a report has been made by the storage company as to the dates of the placing in storage of said property in question, it can be easily ascertained what property has been left in storage beyond the statutory period, and the receiver will be ordered to sell only such property as has so remained in storage.
Third. If a portion of the property in question has been made the subject of a contract of sale, such contract of sale does not affect the matter at issue and is purely a matter between the packing company and the second party to the contract. No actual delivery of any specific pork is averred herein. "The packing company no doubt has pork loins which have not been in storage beyond the statutory period with which they can carry out said contract of sale. If a portion of said property has been actually sold and has been left in the warehouse of the creamery company beyond the statutory period, that does not affect the application of the cold storage act since the vendee can no more offer the property for sale than can the vendor, the packing company. If this proves to be the fact the vendee can not prevent the application of the statute, and the taking of the property by the receiver.
According to the report of the Creamery Company all the property in question in the hands of said company stands in the name of the Columbus Packing Company, and if any of said *112 property has been actually sold the vendee thereof can come into court upon distribution of the proceeds of the sale by the receiver and ask for and receive his proportionate share of said proceeds. He can have no causé for complaint since the court is ordering sold for him property that he can not himself offer for sale.
Fourth. It may be, and doubtless is true that the property in question is in no immediate danger of destruction or loss, but inasmuch as the packing company can not offer the same for sale, either now or in the future, it is manifestly in danger of ultimate loss and destruction. For the public welfare it must be conserved and ultimately sold by the receiver, so why not now 1 Nothing can bé gained for anyone by delay and possible loss may result. It is not necessary to wait until a decision ás to whether or not the property in quesion has been actually hoarded, for the reason that nothing could be gained for anyoné thereby. The property in question, whether it be found to have been intentionally hoarded or not, can not be sold by the Columbus Packing Company or any vendee thereof. Hence, defendant packing company can not be injured by the failure of the court to first decide the question of intentional hoarding before ordering the property in question sold. Of course it is not the intention of the court to order or permit the receiver to withdraw from storage at one time this large amount of pork and thus endanger its preservation. It will be ordered kept in storage and only withdrawn therefrom as the demand for its sale and consumption justifies.
Having now discussed the objections of the defendant packing company and found them without merit, the court wiil grant the application of the receiver and order sold the property in his hands which has remained in storage beyond the statutory limitation. It is the desire and will be the order of the court that this property be sold in a manner and at a price conducive to the benefit of the general public, and the court trusts that this action may in a measure tend to reduce the present general high cost of living and may serve as a warning to all hoarders of food stuffs that the laws of this state can not Avith impunity be violated.